Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7026 | **DATE** | 12/12/2001 |
| **CASE TITLE** | Pinkston vs. University of Chgo | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** The University's motion (Doc 12-1) for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SCT | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 27

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELSIE M. PINKSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 00 C 7026 |
| | ) | |
| THE UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a motion for summary judgment by Defendant University of Chicago. For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff Elsie Pinkston ("Pinkston") obtained her bachelor's degree in developmental and child psychology in 1969, her master's degree in 1971 in human development, and her Ph.D. in developmental and child psychology in 1974. Upon completing her doctoral work, she began her employment with Defendant University of Chicago ("the University"). Her initial position was that of assistant professor; in 1979 she became an associate professor and in 1987 achieved a full professorship.

Michael Sosin, the male University employee against whom Pinkston compares herself, received his bachelor's in 1972, his first master's degree in 1973, his second in 1975, and his doctoral degree in 1977. He was recruited to the University of Chicago from the University of Wisconsin-Madison, where he was already a full professor.

In 1978, still at the assistant professor level, Pinkston began to suspect that her pay was not commensurate with her colleagues, and in November 2000 she filed a complaint stating claims to that effect under the Equal Pay Act. The University has moved for summary judgment of her claim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light

most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

To accurately determine whether Pinkston has made out her prima facie case, we must examine which of the events she describes falls within the allowable time period. Any action under the Equal Pay Act must be brought within 2 years of the injury alleged, or within 3 years if the defendant's conduct is willful. 29 U.S.C. § 255. Pinkston says she may rely on her entire 28-year work history because of equitable tolling. Equitable tolling suspends the applicable statute of limitations until a plaintiff through reasonable diligence discovers that an injury has occurred. Johnson v. McCaughtry, 265 F.3d 559, (7th Cir. 2001). Pinkston by her own admission first suspected a pay discrepancy in 1978. She insists that her suspicion was not knowledge, constructive or actual, of her purported injury because the University forbade employees from discussing and thus comparing their salaries. Without this comparative information, she claims, she could not be sure of her injury, and the statute of limitations was accordingly tolled until the summer of 2001 when she was first provided

with salary figures that confirmed her longstanding suspicions during the discovery phase of the instant suit.

Equitable tolling, as the name suggests, is a doctrine grounded in equity and fairness. It should be applied sparingly and only to avoid injustice. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 90 (1990). In this case, Pinkston's affidavit states that she was not actually aware of any pay disparity until the summer of 2001, at least six months after she filed her complaint. (Pinkston Aff., ¶ 44). She provides no indication of any event between 1978, when she first began to suspect that she was underpaid, and the filing of her complaint that would solidify her suspicions. Pinkston had enough information to file a complaint in 2000 without concrete proof of a difference in pay, and the state of her knowledge of her injury was the same in 2000 as it was in 1978. In essence, she asks us to find that her injury did not accrue until 6 months after she filed a complaint asserting the same injury, which defies logic. Accordingly, she has not shown that she was the victim of an injustice that could be corrected by equitable tolling. Cf. Chapple v. Nat'l Starch and Chemical Co. and Oil, 178 F.3d 501, 506 (7th Cir. 1999).

This is not to say that Pinkston needed to bring her suit by 1980, 2 years after she had her first inkling that she might have a claim against the University. Each issue of

an illegally disparate paycheck constitutes a separate actionable injury.[1] Wagner v. NutraSweet Co., 95 F.3d 527, 534 (7th Cir. 1996). Pinkston can rely on the allegedly discriminatory paychecks that she received during the time limits given in 29 U.S.C. § 255. We must now consider which of the time periods enumerated in that statute apply to this case. That decision turns on whether Pinkston can show that the University acted willfully. A finding of willfulness under the Equal Pay Act means that an employer acted with knowledge of or reckless disregard for the illegality of their pay practices. Bankston v. State of Illinois, 60 F.3d 1249, 1253 (7th Cir. 1995). So, an employer who fails to follow a memorandum from their legal department advising them to cease a payment practice, pays straight time for overtime work, or specifically instructs employees to record less than the actual time they have worked acts willfully for the purposes of the Equal Pay Act. Id. at 1254; Hardrick v. Airway Freight, 63 F. Supp. 2d 898, 903-04 (N.D. Ill. 1999); Cunningham v. Gibson Electric Co., 43 F. Supp.

---

[1] This separateness prevents Pinkston from availing herself of another related doctrine that expands the time period upon which a complaint can be based: the continuing violation doctrine. Under that doctrine, a plaintiff can look to events that occurred outside the limitations period if the events are not truly separate but rather a continuous unbroken chain that ends within the limitations period. Clearly, since each paycheck is considered a separate injury, Pinkston cannot properly characterize them as a single act occurring over an extended period of time. See Pollis v. New School for Social Research, 132 F.3d 115, 118-19 (2nd Cir. 1997); E.E.O.C. v. Penton Industrial Publishing Co., 851 F.2d 835, 837-39 (6th Cir. 1988); Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167-68 (8th Cir. 1995); cf. Snider v. Belvidere Twp., 216 F.3d 616, 618-19 (7th Cir. 2000) (not allowing a plaintiff to apply the continuing violation doctrine to a Title VII wage discrimination claim because each check is a separate injury).

2d 965, 975-77 (N.D. Ill. 1999). In this case, as discussed more fully *infra*, the University based its pay decisions on legitimate criteria related to a good faith assessment of professors' worth to the University. This is not the stuff of willfulness, and we conclude that Pinkston is limited to actions by the University for the two-year period preceding her complaint, or events on or after November 7, 1998.

A prima facie case under the Equal Pay Act requires a plaintiff to show different wages paid to employees of the opposite sex for work that equal skill, effort, and responsibility performed under similar working conditions. Snider, 216 F.3d at 620. Employees' work is considered to require equal skill, effort, and responsibility if their jobs share a "common core of tasks." Id. An employer who later assigns additional tasks to one employee can justify a disparate rate of pay without violating the act, but the new tasks must make the job substantially different. Id.; see also Fallon v. State of Illinois, 882 F.2d 1206, 1209 (7th Cir. 1989).

It is undisputed in this case that Pinkston did not have the same salary as Michael Sosin during the applicable time period. Furthermore, it is undisputed that in the 1998-99 and 1999-2000 school years, Sosin received higher percentage raises than Pinkston. Pinkston and Sosin both work in the same environment at the university. The parties make much of the differences between their respective tasks, with Pinkston claiming that she does more and better work than Sosin and the University claiming that Pinkston's work has always been inferior to Sosin's. These claims seem to present

factual questions, but even assuming that Pinkston has established a prima facie case, the University is still entitled to summary judgment if they can establish one of four affirmative defenses: "that the pay disparity is due to: '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" Dey v. Colt Const. & Development Co., 28 F.3d 1446, 1462 (7th Cir. 1994).

The University relies on the fourth defense, which has been described as a "catch-all" provision, allowing an employer to base salary decisions on innumerable factors, as long as they are unrelated to an employee's sex. Id.; see also Fallon, 882 F.2d at 1211. In examining the reasons proffered by the employer for the difference in pay, we may not accept Pinkston's invitation to superimpose our judgment of whether Sosin was in fact more or less deserving of a higher salary than she. Dey, 28 F.3d at 1462. We are not, as one court aptly described it, a "super-personnel department." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir.1997). Our inquiry is limited to whether the employer's reason is bona fide and whether it was discriminatorily applied. Dey, 28 F.3d at 1462.

As stated earlier, Pinkston and Sosin have never garnered the same salary. However, the University states that this difference originated in the fact that Sosin did not begin his professional career with them. Rather, the University had to twice try to recruit him from the University of Wisconsin-Madison and were successful only by

raising his initial salary level above Pinkston's. The University attributes the higher percentage raises to Sosin's performance on student evaluations, his appointment to a chair position, his service on a department publication and committee, and his research activities. Pinkston has offered nothing to refute that these reasons existed; rather she claims that they did not warrant the University's assessment that they were more valuable than her own activities. That is precisely the type of analysis that we may not perform. See Wollenburg v. Comtech Mfg. Co. 201 F.3d 973, 976 (7th Cir. 2000). Because the University has given bona fide reasons why Sosin receives a larger salary than Pinkston, they are entitled to summary judgment as to Pinkston's claim.

## CONCLUSION

For the foregoing reasons, the University's motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: ___December 12, 2001___

- 8 -